CARROLL WHITAKER, Respondent, *v.* HEMAN L. WHITE and Another, Appellants.

*Letters of a party as evidence in his favor — entries of engagements in a lawyer's diary as evidence of where he was on certain days.*

On the trial of an action brought against a firm of stockbrokers, to recover a balance claimed by a customer to be due him on certain purchases and sales of stock, letters written by the plaintiff to the defendants were admitted in evidence on behalf of the plaintiff over objections that they were immaterial, were not evidence as against the defendants, and contained declarations in the plaintiff's favor.

*Held,* that the letters were properly admitted, since they related to the matter in controversy and were parts of a continuous correspondence between the parties, and were either answers to communications from the defendants or were letters which called for an answer.

The plaintiff, who was a lawyer, was permitted to give in evidence upon the disputed question as to the date of an interview at the defendants' office, two entries made in his lawyer's diary of the time and place of engagements for the days in question, not connected with the subject in controversy, with a view of showing where he was on those days.

*Held,* that these entries would doubtless have been proper to refresh the plaintiff's recollection as to the time and place of such engagements, but if they failed to do this, they were not admissible as original entries, for they were irrelevant to the real issue ;

That an entry to that effect was clearly inadmissible in a case in which the plaintiff was able to testify to the interview at the defendants' office on that date without the aid of the memorandum ;

That both entries were open to the objection that the plaintiff did not testify to the correctness of either when made, which was indispensable ;

And that the error in admitting the entries was prejudicial to the defendants and called for a reversal.

APPEAL by the defendants, Heman L. White and George W. Bartholomew, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 4th day of March, 1892, upon a verdict rendered at the New York Circuit.

The complaint alleged that on or about November 9, 1887, defendants, as stockbrokers, doing business under the name of A. H. Brown & Co., sold for and on account of the plaintiff 300 shares of the stock of the Texas and Pacific Railroad Company, and received as the proceeds of such sale $7,350. It further alleged that the plaintiff was at the time of the sale indebted to the defendants for and on account of the purchase of the said stock in the sum of $5,725. Judgment was asked for the difference, $1,625, with interest.

The answer admitted the sale of this stock and alleged that the indebtedness which the defendants were entitled to offset against the proceeds of the sale of said stock was greater than that alleged in the complaint.

For a further defense and as a counterclaim, the answer alleged that the defendants had also purchased and sold for and on account of the plaintiff 100 shares of the stock of the Louisville, New Albany and Chicago Railroad Company, and that upon the entire account with the plaintiff, which should embrace these two transactions, the balance was in defendants' favor to the amount of $1,471.95, and an affirmative judgment for that sum was asked.

The trial resulted in a verdict for the plaintiff for $2,043.45.

*George P. Gordel,* for the appellants.

*Durnin & Hendrick,* for the respondent.

BARRETT, J. :

The contest here was mainly upon the defendants' counterclaim. The defendants were stockbrokers, and their counterclaim was for a loss upon the purchase — alleged to have been made on plaintiff's

account — of 100 shares of the capital stock of the Louisville, New Albany and Chicago railroad.

The plaintiff denied the defendants' authority to make this purchase on his account, and the jury, by their verdict, have sustained his denial.

No order was entered denying the defendants' motion for a new trial, and the appeal is solely from the judgment. The verdict is, therefore, conclusive, and we are limited to a review of the exceptions taken upon the trial. There were no exceptions to the judge's charge, and but two questions of evidence are presented by the record. The defendants excepted to the admission, over their objection, of certain letters written to them by the plaintiff. They also excepted to the admission of certain memoranda made by the plaintiff in his law diary.

As to the letters, the defendants now contend that they should not have been admitted at all until after the plaintiff had rested. They bore solely upon the counterclaim, and the contention is that the plaintiff had no right, while upon the stand proving his case, thus to forestall the defendants' case. We find, however, no objection in the record to the procedure upon the trial nor to the order of proof. The objection was to the materiality of the letters, and, as to one of them, that it contained declarations in the plaintiff's favor. These objections alone can now be considered, especially as we are not reviewing an order denying a motion for a new trial.

The exceptions as to two of the letters in question are clearly untenable. One was objected to as immaterial and " as not evidence against the defendants." They were. however, certainly material, being in answer to letters from the defendants asking for a deposit of money to secure them against depreciation of the plaintiff's stocks. To the first of these letters the plaintiff replied that he did not understand their letters.

" What is the trouble," he says. " I can't understand why my account is not good at present T. & P. prices (meaning Texas & Pacific). Why am I bound to deposit ? "

This letter ignored the Louisville, New Albany and Chicago transaction and thus gave the defendants notice that the plaintiff did not consider that the stock of that railroad was in his account. It certainly called for an answer indicating, at least, that the deposit

was required because of the depreciation in the Louisville, New Albany and Chicago railroad stock, as well as in the Texas and Pacific.

The second of these letters bore most directly upon the issue. The defendants had written to the plaintiff as fellows :

" Texas Pacific is 21½ to-day, and L. N. A. & C. (meaning Louisville, New Albany and Chicago) say 30 to 35, making 3 to 4,000 due, besides putting up margin." To this the plaintiff, in the second letter, replied :

" *You should not have any L. N. A. & C. stock charged to me on your books.* I will take it for you if I can raise the money *and own it,* otherwise you must look after it yourself."

This correspondence was certainly material, and indeed important, on the question of the defendants' authority to purchase the Louisville, New Albany and Chicago stock for the plaintiff.

A more serious question is presented by the exception with regard to the third letter. That was objected to as "immaterial and as containing declarations in the plaintiff's favor." This letter is certainly open to the latter criticism. And if, as contended by the appellant, it was not in response to any letter written by them, but was " wholly isolated from the correspondence between the parties," we would have deemed it inadmissible, and would then have considered the further question as to whether its contents were, under all the circumstances, sufficiently prejudicial to the defendants to require a reversal of the judgment. But this letter was not an isolated statement simply giving the plaintiff's side of the existing dispute. It was written on the seventh of November, and was, in fact, an answer to the defendants' telegram of the same date and to their letter of the fourth. It is true that the plaintiff testified that he did not think he made any answer to this letter of the fourth, but his letter of the seventh — under consideration — bears internal evidence that it was an answer to both the letter of the fourth and the telegram of the seventh. The letter of the fourth is a distinct notice that on the ninth the defendants would sell at auction (because of the plaintiff's failure to make his account good, with ten per cent margin) the Louisville, New Albany and Chicago stock, as well as the Texas and Pacific. There is a postscript to this letter in the following words :

" If you would give us an order to sell the stocks at the N. Y. Stock Exchange previous to the date mentioned, we would much prefer that course."

This postscript is directly answered by the plaintiff's letter of the seventh thus :

" If you wish an order, as you term it, to sell my 300 shares of Texas Pacific, I will give it, *and do give it*."

He then refers to the Louisville, New Albany and Chicago, and refuses to give the order as to that stock, for the reason (we quote) " That I desire to contest that purchase and sale (at its present price) if it is intended to charge to me, in a court of law."

In their telegram of the seventh, the defendants informed the plaintiff that White (the member of their firm with whom Whitaker had mainly dealt) could not meet him as he, plaintiff, had requested.  In the letter of the seventh the plaintiff says :

" *I regret that Mr. White would not meet me.*  I presume that he feels embarrassed over the L. N. A. & C. matter, &c."

Thus plainly referring to the telegram of the same date.

The letter of the seventh was, therefore, an answer to the defendants' previous letter and telegram.  It was also part of a correspondence which did not terminate until the following December. Although the defendant did not apparently answer the letter in question, it certainly called for an answer, and it seems to have had the effect of postponing the threatened sale on the ninth, of the Louisville, New Albany and Chicago stock.  It was followed, too, on the seventeenth of the same month by a stronger, though briefer, letter, in which the plaintiff declares that he has been most shamefully treated ; and to this last letter the defendants replied, defending themselves against the accusation.

We think, therefore, that the letter of the seventh was properly admitted : *first*, as part of a continuous correspondence between the parties ; *second*, as an answer to the defendants' letter and telegram ; and, *third*, as a letter calling, under the circumstances, for an answer.

We think, however, that the exceptions with regard to the entries in the plaintiff's diary were well taken.  The defendants claimed that the order to purchase the Louisville, New Albany and Chicago stock was given by the plaintiff, in their office in New York, on the 11th of· June, 1887.  The plaintiff denied this, and claimed that the

only conversation which he had with the defendants on the subject of the purchase of this stock was in their office on the 15th of June, 1887. And he was supported in this claim by the witness Roosa. The object with which the first of these entries was offered was to prove that the plaintiff was in Saugerties and Kingston on the eleventh of June, and could not, therefore, have been in the defendants' office upon that day. The object with which the second entry was offered was to support the testimony that the plaintiff was in New York with Roosa on the fifteenth of June.

These entries were, therefore, exceedingly important, and, in view of the crucial conflict between the parties as to dates, may well have turned the scale. We think they were inadmissible under well-settled rules. They did not purport to be entries with regard to any fact in issue. They were simply entries, made in the plaintiff's law diary prior to the eleventh and fifteenth days of June, indicating future engagements on the dates in question. They would doubtless have been proper to refresh the plaintiff's recollection as to the time and place of such engagements, but if they failed to do this, they were not admissible as original entries, for they were irrelevant to the real issue. As to the fifteenth of June, the entry was clearly inadmissible, for the plaintiff was well able to testify to the interview at the defendants' office on that date without the aid of the memorandum. (*The National Ulster County Bank* v. *Madden*, 114 N. Y. 280 ; *Marcly* v. *Shults*, 29 id. 346 ; *Guy* v. *Mead*, 22 id. 462.) And further, the plaintiff did not testify to the correctness of either entry, when made. This was indispensable. (Same cases.)

It is contended that, even if inadmissible, these entries could not have prejudiced the defendants, as the plaintiff had already testified without objection to their terms. We find, however, that the plaintiff did not testify to the terms of the entry of June fifteenth, and that his testimony as to that of June eleventh was an inaccurate conclusion drawn from what really appeared in the book. He said that the latter entry showed that he was in Saugerties and Kingston on the eleventh of June, whereas it really showed nothing more than that on a previous day he had agreed to be there. He gave no testimony, however, accurate or inaccurate, as to the terms of the entry of June fifteenth, and the admission of that entry was unquestionably prejudicial.

The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed and new trial ordered, with costs to abide the event.